UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
MARJORIE GUMBS,


               Plaintiff,                              08 CR 2382 (SJ) (RLM)

               v.

                                                MEMORANDUM
                                                AND ORDER

OFFICE OF MENTAL HEALTH and
SOUTH BEACH PSYCHIATRIC
CENTER,

               Defendant.
------------------------------------------------X

A P P E A R A N C E S
CRONIN & BYCZEK
1983 Marcus Avenue
Suite C-120
Lake Success, NY 11042
By:    Susan P. Bernstein
Attorneys for Plaintiff

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL FOR
THE STATE OF NEW YORK
120 Broadway, 24th Floor
Brooklyn, NY 10271
By:    Barbara K. Hathaway
Attorneys for Defendant


**JOHNSON, Senior District Judge:**

1

<u>BACKGROUND</u>

Plaintiff Marjorie Gumbs ("Gumbs" or "Plaintiff"), an African-American woman, has been employed as a security officer by Defendant South Beach Psychiatric Center ("South Beach") since 1990.  South Beach is a mental health facility operated by the New York State Department of Mental Health ("OMH"). (South Beach and OMH will collectively be referred to as "Defendants.")  South Beach is a treatment facility with in- and out-patient programs for individuals suffering from mental health issues.  Among other duties, the South Beach staff must insure that patients do not harm themselves or abscond from the facility.

In August 2006, after 16 years of service during which she received several commendations, Gumbs was promoted from the position of Security Safety Officer I ("SSOI") to Security Safety Officer II ("SSOII").  The person who promoted Plaintiff was Chief Jonathan Mendell, who remained her supervisor upon promotion. At the time, at least 6 of 11 SSOIs and 1 out of 6 SSOIIs were African-American.

The first 12 months of the SSOII position are probationary and include a month of orientation and training, which Gumbs attended.  During her probationary period as an SSOII, Plaintiff received three evaluations.  The first, issued on October 16, 2006, indicated that Plaintiff's performance was "average."  In the comment section of the report, Mendell wrote, <u>inter alia</u>, "SGT Gumbs will be scheduled to attend Incident Command, Emergency Management Training. . . . SGT Gumbs needs to develop better communication skills when dealing with supervisory situations."

2

Mendell also indicated that Plaintiff's reports were neither written well nor grammatically correct.  The second report, dated January 15, 2007, noted that Plaintiff's performance was "adequate but barely making it."  Specifically she was rated as "above average" in the categories of attendance and punctuality, but either "average," or "below average," in 14 of the 15 remaining categories and "unsatisfactory" in the category "knowledge of own field."  Gumbs was informed that she may be demoted upon the next evaluation if Mendell saw no improvement in several critical areas, including, inter alia, exercising better judgment in assigning tasks to those under her supervision, and providing the proper amount of supervision. She was reinstructed in various areas of department operation and function.  In Plaintiff's third evaluation, dated April 15, 2007, she received the same scores in 16 of the 17 categories.  She continued to score "above average" for attendance and punctuality, and "average," "below average" or "unsatisfactory" for 15 categories, as she had at her second evaluation.  However, in one category, "[g]enerally cares," her score demoted from "average" to "below average."

Among the incidents described by Defendants as negatively impacting her performance reviews was one in which Gumbs and others attended an emergency management meeting in preparation for an impending and allegedly severe storm. Specifically, protocol was established in the event the storm flooded the basement, where the main kitchen used to feed patients was located.  At the time the storm hit, Plaintiff was the only SSOII on duty, and failed to follow the protocol, which led to a

delay in securing the area, as the Executive Director did not learn of the flood in time to prevent extensive damage. Indeed, the extent of the flood was not revealed to management until the Executive Director unilaterally called the facility on an unrelated matter.  Plaintiff agrees that she failed to follow the set protocol.

Defendants allege that during this same storm, Plaintiff exhibited a lack of judgment not only by not immediately contacting management but by directing an SSOI to leave his post where he was guarding a maintenance worker who was managing a manhole.  Plaintiff denies that this incident occurred.

Mendell recommended Plaintiff be demoted back to SSOI.  After Plaintiff was returned to the position of SSOI, Pedro Valentin, a Latino man, and Shatice Daniels ("Daniels"), an African-American woman, were promoted to SSOII. Complaints persisted after Plaintiff's demotion, including one from Daniels.

Plaintiff claims that on account of her race she was inadequately trained and not provided with specific ways to improve her alleged communication skills, making inevitable a subsequent negative performance evaluation.  She disagrees with Mendell's finding that she lacked judgment during the flood and was insensitive to her subordinates, framing the issues as a matter of his opinion versus hers. Additionally, she alleges that Mendell singled her out, referred to her as "uppity" on several occasions, and that he tolerated others making certain comments she alleges to be race-based, such as "these people" and "you'se [*sic*] people." She additionally alleges that Sergeants referred to someone as a "boy," made reference to "Indians

4

with dots on their heads," and that sometime between 1992 and 1996, a colleague named Wassef Giris told her "you people are lazy."  Plaintiff also claims that, after she was demoted, Valentin harassed her by telling her "Don't make me take my belt off," told her that he believed Plaintiff's handwriting to be "too big" and said that he likes his omelets "hard."

At Plaintiff's deposition, she testified that although Mendell commended her performance in the past and made the decision to promote her, it "just seemed suspicious" that he began issuing negative performance evaluations in February 2007.  She also claims that he made insufficient effort to assist her and didn't properly explain what he perceived to be her shortcomings.  As to why Plaintiff believes these actions (or non-actions, as they may be) are discriminatory, she stated that she "just felt there was something definitely wrong" because Mendell's "actions, his motive, his behavior" were such that she "could not perform to his liking." Plaintiff testified that Mendell "never wanted an African-American female as a Safety Security Officer II," and both suggests that Mendell was jealous of her, and that the post-demotion complaints against her by other staff (including Shatice Daniels, her African-American replacement) might be part of a conspiracy.

Defendants move for dismissal under Federal Rule of Civil Procedure ("Rule") 4(m), for Plaintiff's failure to serve the complaint within the prescribed time period.  Defendants also move for summary judgment on the merits of all of Plaitniff's claims.

5

<u>DISCUSSION</u>

*Plaintiff's Failure to Serve Within 120 Days*

Rule 4(m) requires that the summons and complaint be served on a defendant within 120 days or be dismissed.  Fed. R. Civ. P. 4(m).  The Rule provides an exception for a plaintiff who shows cause for the failure.  <u>Id.</u>  However, dismissal, even in the absence of good cause, is not mandatory.  <u>See</u> <u>Almonord v. Kingsbrook Jewish Med. Ctr.</u>, 2007 WL 2324961, at *13 (E.D.N.Y. Aug. 10, 2007) (<u>quoting</u> Fed. R. Civ. P. 4(m) Advisory Committee Notes ("The new subdivision. . . authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.").)  In light of the Second Circuit's preference to resolve disputes on the merits, the Court denies Defendants' request to dismiss the action on the basis of Plaintiff's untimely service.  <u>See</u> <u>Cody v. Mello</u>, 59 F.3d 13, 15 (2d Cir. 1995) ("[L]itigation disputes should be resolved on the merits, not by default" because "dismissal is a harsh remedy.") (internal citations omitted); <u>see also</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90 95-96 (2d Cir. 1993) (same).

*Summary Judgment Standard*

It is well-settled that a party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); <u>Anderson</u>

v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party

because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

*Title VII Claims*

Discrimination claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., have long been guided by the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this test, Plaintiff must first make a *prima facie* case of discrimination.

In order to establish a *prima facie* case of discrimination based on race under Title VII, an employee must show that he or she: "(1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) that the circumstances of the adverse employment decision give rise to an inference of discrimination. See Mandell v. Count of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (applying the framework set forth in McDonnell Douglas). Assuming the plaintiff demonstrates a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason" for the adverse action.  Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). "If the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination." See id. Finally, in order to survive a motion for summary

judgment, plaintiff must offer "concrete particulars" to substantiate the claim. Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985).

In this action, the parties do not dispute that Plaintiff is a member of a protected class or that she was demoted. What remains are her qualification for the position and the issue of whether her demotion arose under circumstances that permit an inference of discrimination. To that end, Defendants cite the following reasons for Plaintiff's demotion, which addresses both issues: (1) her poor adjustment to the position of SSOII; (2) her lack of communication skills; (3) her failure to display good leadership and supervision; and (4) her insensitivity to her subordinates, all documented in a series of average and sub-average performance reviews. Plaintiff responds that she (1) was indeed qualified by virtue of her promotion; (2) successfully challenged certain post-demotion complaints made against her; and (3) that she experienced several race-based discriminatory comments and suffered discriminatory animus while working at South Beach.

The Court will assume arguendo that Plaintiff has met her *prima facie* burden, at which point Defendants have the burden of production to demonstrate a non-discriminatory reason for Plaintiffs demotion. Given the above summary of Plaintifff's performance in the SSOII position, the Court finds that Defendants have carried their burden. See, e.g., Davis v. State Univ. of N.Y., 802 F.2d 638, 641 (2d Cir.1986) (noting that an "employer need not prove . . . that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory"); Dister v.

Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal").

The final inquiry in resolving Plaintiff's claim of discrimination is whether she can demonstrate that Defendants' reasons for demoting her are a pretext and that the true reason for her demotion is discrimination.  In this regard, it is noteworthy that Plaintiff's memorandum of law makes no mention of this ultimate burden of persuasion, perhaps because such an argument rests on weak footing.

"[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); see also Filozof v. Monroe Community College, 411 Fed. Appx. 423 at 427 (2d Cir. 2011) (quoting same).  Here, Plaintiff was promoted, evaluated, and demoted by Mendell, which weakens her argument that Mendell discriminated against her.  Additionally, Plaintiff does not dispute that she received a month of training upon promotion, was given repeated instruction on what Mendell perceived to be her shortcomings after her second evaluation, and failed to follow protocol during the flood that could have jeopardized the food reserves for the facility.  That she disagrees with Mendell's assessment of her performance does not on its own prove her case.  See Valentine v. Standard & Poor's, 50 F. Supp. 2d 262,

284 (S.D.N.Y. 1999) ("[P]laintiff's subjective disagreement with [her] reviews is not a viable basis for a discrimination claim.")

Of the various comments cited by Plaintiff that purportedly demonstrate discriminatory treatment on the basis of race, Plaintiff relies primarily on a comment by Mendell that Plaintiff is "uppity" which she alleges he said "numerous times" since he began working at South Beach in the 1990s.  Even assuming that "uppity" is a negative, race-based insult, it is insufficient on its own to establish that Plaintiff was demoted for a discriminatory reason and not those outlined in her evaluations. See Valtchev v. City of New York, 400 Fed. Appx. 586 at 591 (2d Cir. 2010) (two comments insufficient to permit inference of discrimination where employee evaluations provided "detailed accounts" of performance deficiencies); Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 280 (S.D.N.Y. 2007) (denying plaintiff's discrimination claim where, among other things, the vast majority of the comments at issue were not directed at plaintiff individually).

The remaining comments about which Plaintiff complains are not alleged with any kind of specificity (such as the unsupported statement that Mendell permits unidentified "non-black sergeants" to refer to African-Americans as "these people" or "you'se [sic] people") or are hearsay (such as Plaintiff's claim that she "learned from records" about the allegedly discriminatory conduct of other colleagues) or are too far remote in time to permit an inference that the action or comment is in any way connected to Plaintiff's May 2007 demotion (such as the alleged incident from

1992 in which Wassef Giris allegedly told Plaintiff "you people are lazy").  See, e.g., Woods v. Newburgh Enlarged City Sch. Dist., 288 Fed. Appx. 757, 759 (2d Cir. 2008) ("[B]y itself, [a] conclusory prediction as to the possibility of racial bias is insufficient to permit an inference that such bias did, in fact, inform any particular conduct experienced by [Plaintiff], much less 'permeat[e]' her work environment.'") (quoting Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999)); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) (party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"); Pamphile v. Tishman Speyers Properties, L.P., 2006 WL 1806505,  at *5 n.2. (hearsay comments inadmissible on a motion for summary judgment) (E.D.N.Y. June 29, 2006) (collecting cases); Morris v. New York City Dept. of Sanitation, 2003 WL 1739009, at *6 (S.D.N.Y. April 2, 2003) ("[S]tray remarks without a demonstrated nexus to the complained of personnel actions, cannot defeat the employer's motion for summary judgment.")  Therefore, Plaintiff has not demonstrated that Defendants' reason for her demotion was a pretext.

Plaintiff's remaining arguments in support of her claim of discrimination on the basis of race have been considered and are also unavailing.  Therefore, her claim of discrimination is dismissed.

*Hostile Work Environment*

Defendants claim that because Plaintiff did not allege a hostile work environment claim in her EEOC charge, the claim is unexhausted and cannot be considered herein.  However, the Court's jurisdiction is proper not only on issues specifically raised in Plaintiff's EEOC's charge, but also those claims "reasonably related" to those charges alleged in the EEOC charge.  "The scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the charge but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Smith v. Amer. President Lines, Ltd., 571 F.2d 102, 108 n.10 (2d Cir. 1978);  see also Martin v. MTA Bridges & Tunnels, 610 F. Supp. 2d 238, 253 (S.D.N.Y. 2009); Trindade v. Leavitt, 2005 WL 1541050, at *2 (E.D.N.Y. June 30, 2005).  Because Plaintiff's claim that she was subjected to a hostile work environment is also based on her race, the Court finds that it is reasonably related to her charge of discrimination insofar as an investigation of her race-based discrimination claim would require inquiry into the same facts necessary to bring a hostile work environment claim.

However, this finding does not save Plaintiff's case.  To survive summary judgment on a hostile work environment claim "a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.' " Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)

(quoting Harris v. Forklift Sys., Inc., 504 U.S. 17 (1993)).  The paucity of specific, admissible comments drawn upon by Plaintiff in her discrimination claim similarly require dismissal of her hostile work environment claim.

*Sovereign Immunity*

The Eleventh Amendment of the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Eleventh Amendment has been read to also bar suits against a state by one of its own citizens.  See Papasan w. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  Additionally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Anderson v. New York Office of Court Admin. of Unified Court Sys., 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009) (state immune from § 1983 prosecution).  Nor are claims filed pursuant to § 1981 proper as applied to a state or arm of the state.  Cajuste v. Lechworth Dev. Disability Serv., 2005 WL 22863, at *2 (S.D.N.Y. Jan. 1, 2005) (dismissing § 1981 claim against medical facility operated by the New York State Office of Mental Retardation and Development Disabilties). Therefore these claims are dismissed.

*Defendants' Motion to Strike*

Defendants move to strike an affidavit prepared by Gumbs in opposition to their motion for summary judgment.  Upon careful review of this affidavit, it is clear that its consideration would not affect the outcome of this action.  The affidavit rehashes certain deposition testimony already a part of the record and presents for the Court's consideration inadmissible hearsay.  Defendants' motion to strike is denied as moot.


## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and Defendants' motion to strike is denied as moot.  The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims.  The Clerk of the Court is directed to close the case.



SO ORDERED.


DATED:  March 13, 2012                    _____/s_____
           Brooklyn, New York                    Sterling Johnson, Jr, U.S.D.J.